OBLENIS et al. v. CREETH.

(Circuit Court, S. D. New York. April 23, 1895.)

DEEDS—DESCRIPTION—BOUNDARY ON TIDE WATER.

A grant, made in 1666, of a portion of Manhattan Island, after defining a north and south line, running from the Hudson to the East river, and forming the westerly boundary of the lands granted, proceeded to convey to the grantees all lands "lyeing and being within the said lyne, to draw north and south as aforesaid, eastward to the end of the towne and Harlem Ryver, or any part of the said ryver on which this island doth abutt, and likewise on ye North and East Ryvers within the lymitts aforementioned." *Held*, that the eastern boundary of the grant was the Harlem river, and, that river being tide water, the grant carried only the land to high-water mark.

This was an action of ejectment by Henry P. Oblenis and others against Thomas J. Creeth, submitted to the court without a jury, upon an agreed statement of facts.

Woodville Flemming, Phillips & McKinny, and John B. Jones, for plaintiffs.

H. W. Ingersoll and Robert G. Ingersoll, for defendant.

LACOMBE, Circuit Judge (orally). This is an action of ejectment, the property being located at about 124th street and Pleasant avenue. It is conceded by the stipulation that the property, in 1666, was below high-water mark on Harlem river, and that the plaintiffs are the successors in title to the original grant upon which the plaintiffs rely, viz. a certain patent granted by Richard Nicolls, governor of the province, under date of October 11, 1666. The patent bears date of execution at Fort James, in New York, on Manhattan Island, a circumstance which enables us to determine what is meant by the words "hence" or "hither," wherever occurring. It recites that there is a certain town or village upon this island (Manhattan) commonly called and known by the name of New Harlem; that there are certain inhabitants there, who have built, etc.; that it is the intention to confirm them in the possession and enjoyment of their premises, and to encourage them in further improvement of the lands; and the grant is as follows:

"I have given, ratified, confirmed, and granted, and by these presents due give, ratifye, confirm and grant unto Thomas Delavall, Esq., John Vervelen, Daniel Turner, Joost Oblene, and Resolved Waldron, as pattentees, for and in behalf of themselves and their associates, the freeholders and inhabitants of the said towne, their heires, successors and assigns, All that tract together with the several parcells of land, which already have or hereafter shall be purchased or procured for and on ye behalfe of the said towne within the bounds and lymitts hereafter set forth and exprest, (vizd.) That is to say, from the west syde of the fence of the said towne, a lyne being runne due west fower hundred English poles, without variation of the compasse, and at the end thereof another lyne being drawne acrosse the island north and south, with the variation, that is to say, north from the end of a certaine piece of meadow ground, commonly called the Round Meadow, near or adjoyning unto Hudson's or North Ryver, and south to ye place where formerly stood the saw mills, over against Vercheus or Hogg Island, in the Sound or East Ryver, shall be the western bounds of their lands, and all the lands lyeing and being within the said lyne, to draw north and south as aforesaid, eastward to the end of the towne and Harlem Ryver, or any parte of the said ryver on which this island doth abutt, and likewise on ye North and East Ryvers within the lymitts aforementioned, described, doth and shall belonge to the said towne; as also fower lotts of meadow ground upon the Maine, mark't with No. 1, 2, 3, 4, lying over against ye springe, where a passage hath been used to ford over from this island to the maine and from thence hither, with a small island, commonly called Stoney Island, lyeing to the east of ye towne and Harlem Ryver, goeing through Bronckx Kill by ye little and great Barne's Islands, upon which there are also fower other lotts of meadow ground, mark't with No. 1, 2, 3, 4, together with all ye soyles, creeks, quarryes, woods, meadowes, pastures, marshes, waters, lakes, fishing, hawking, hunting and fowling, and all other profits, commodityes, emoluments, and hereditaments to ye said lands and premises within ye said bounds and lymitts set forth, belonging or in any wise apperteyning, and also freedom of commonage for range and feed of cattle and horses, further west into ye woods upon this island, as well without as within their bounds and lymitts."

The rules for the construction of grants of this kind are simple, and there is no dispute, as I understand it, between counsel upon that branch of the case. A grant of lands running to tide water, or bounded by tide water, or extending unto tide water, or within the limits of tide water, conveys only to high-water mark. Where, however, there is a tract of land conveyed by metes and bounds, and within the tract thus exactly defined there is a portion of tide

water, then the grant carries the land under the water, subject to the right of navigation over it, and the continuance of the waters conditions there prevailing. The first of these propositions finds sufficient authority in the case of Mayor, etc., v. Hart, 95 N. Y. 443, in which, construing this very grant, it was held that the terms "to the river" carried only to high-water mark. Support for the other proposition, viz. that a conveyance by metes and bounds carries all the land in it, whether there is tide water over the land or not, is found in Knight v. Association, 142 U. S. 161, 12 Sup. Ct. 258, and Lowndes v. Board, 153 U. S. 1, 14 Sup. Ct. 758. The difficulty, however, with this grant is that there is no eastern boundary laid out, other than the river itself; nor is there any effort to lay out or to designate any eastern boundary to the east of the Harlem river. The language of the description is as follows: Beginning at a fence in the town, then running a line 400 poles west to another line drawn across the island north and south, with the variations; that is to say, north from the end of a certain piece of meadow adjoining the North or Hudson's river, south to the place where the sawmills formerly stood over against Hogg Island (now Blackwell's Island), in the East river. This locates a line on the upland drawn from high water to high water from the Hudson to the Harlem or East river, and such line is declared to be the western bound of the lands conveyed. The patent then goes on to convey—

"And all the lands lyeing and being within the said lyne, eastward to the end of the towne and Harlem Ryver, or any part of the said ryver on which this island doth abutt, and likewise on ye North and East Ryvers."

Now, that is a conveyance of the entire upper or northern end of Manhattan Island, from this line between New York and Harlem, which is the western boundary, to high-water mark all around. It is a grant complete and compact in itself, comprehensive, including all the upland to high-water mark. Having thus conveyed the northern end of Manhattan Island, the grant deals with some outlying pieces of property, the first of which is thus described:

"As also fower lotts of meadow ground upon the Maine, mark't with No. 1, 2, 3, 4. lying over against ye springe [which both sides concede to be Spuyten Duyvil] where a passage hath been used to ford over from this island to the maine and from thence hither."

Now, the words "from thence hither" do not apply to any eastern boundary. They are descriptive of the ford. It is the ford from the island to the main and from the main back to the island,— "where a passage hath been used to ford over from this island to the maine and from thence hither." That is the first parcel,—the four meadow lots up by Spuyten Duyvil, or the spring where this ford is. Those meadow lots are on the east side of Harlem river. The second of the outlying parcels is "a small island, commonly called Stoney Island." And the location of that island is thus described: "Lyeing to the east of ye towne and Harlem Ryver, goeing through Bronckx Kill by ye little and great Barne's Islands." Inspection of the map shows perfectly well what the draftsman had in mind. He is describing the island as lying not only east of the Harlem river proper, but as east of that part of the Harlem river which

306 FEDERAL REPORTER, vol 67.

goes through Bronckx Kill, being known by that name, by little and great Barne's Islands. That phraseology, "goeing through Bronckx Kill by ye little and great Barne's Islands," does not refer to any eastern boundary running down to any place, but is used as a method of designating that Stony Island lies east not only of the Harlem river proper, but also of that branch of the Harlem river which is known as "Bronckx Kill." And that interpretation is fortified by the next clause, "upon which [i. e. upon Stoney Island] there are also fower other lotts of meadow ground, mark't with No. 1, 2, 3, 4;" for we find by the record that some 15 years or so later there was a dispute between Daniel Tourneur and Lewis Morris about this very Stony Island, in which it appears that the defendant was lawfully possessed of a certain lot of meadow marked "No. 3,"—one of these four lots described as lying on Stony Island.

It seems perfectly plain, then, that this deed conveys, in the first place, the upper end of Manhattan Island from this north and south line known as the "western boundary" out to the water all around, which (the water being tide water) takes to high-water mark; and it then conveys two outlying plots, one a plot of four meadow lots, over by the spring at Spuyten Duyvil, and the other Stony Island, which is described as lying to the east of the Harlem River and of the branch of the Harlem River which is known as the "Bronckx Kill," and which runs by little and great Barne's Islands. To the adoption of this construction in the case at bar, it might be objected that it is contrary to the language of the stipulation as to the facts, for both sides seem to have agreed in the seventh clause that there was an eastern boundary of the whole tract laid out beyond Harlem river under this Nicolls patent, and that such eastern boundary did run from a point on the east bank by Spuyten Duyvil to Stony Island, and thence east of the two Barne's Islands back to Manhattan Island. But the stipulation, although in form an agreement as to facts, is not so in this particular. The deed being in evidence, its interpretation is a matter of law for the court; and a stipulation of the parties that the deed means thus and so cannot control the court's interpretation. Therefore, despite that concession by the defendant that this Nicolls patent did undertake to lay out some sort of an eastern boundary east of the Harlem river, the case must be disposed of under the interpretation which the court gives to the grant.

Verdict directed in favor of the defendant. Plaintiffs except to the ruling, and ask for a stay of 60 days, which is granted.